2009 VT 34

## State of Vermont v. Stephen Bain

[975 A.2d 628]

No. 06-327

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 27, 2009

*Tracy K. Shriver*, Windham County State's Attorney, and *Steven M. Brown*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant Stephen Bain appeals from district court orders denying his motion to suppress certain evidence obtained after a search of his home and approving the reconstructed trial court record under Vermont Rule of Appellate Procedure 10(c). Defendant challenges his convictions for possession of stolen property and possession of marijuana, as well as his enhanced sentence under the habitual-offender statute. He argues that the recreated record is inadequate for effective and meaningful appellate review, that the trial court erred in denying his motion to suppress, and that improper jury instructions on the habitual-offender charge confused the jury and did not guarantee unanimity, thus violating the Vermont Constitution. We disagree and affirm.

¶ 2. On May 22, 2003, defendant was arrested at his residence for the theft of a large quantity of maple syrup from Dwight Miller Orchards. The arresting officer seized defendant's vehicle and secured his house pending the officer's application for a search warrant. The officer testified that he did not enter the house again until he obtained the warrant the following day. The

warrant permitted officers to search the residence, including outbuildings, sugar houses, vehicles, and storage structures, for syrup containers, labels, and bank receipts. The search yielded a bank receipt, Dwight Miller Orchard labels, containers of maple syrup, labels with defendant's name on them, and over two ounces of marijuana. Defendant was charged with possession of stolen property and possession of marijuana. The State subsequently served the court and defense notice of its intent to seek an enhanced sentence under the habitual-offender statute, 13 V.S.A. § 11, in the event of a conviction.

¶ 3. At trial, defendant filed a motion to suppress, arguing that the search exceeded the scope of the warrant, and that the fruits of the search must therefore be suppressed. The court denied the motion to suppress, finding that the officers "respectfully executed" the warrant and that the marijuana — although it was not named in the warrant — was admissible because it was in plain view of the officers when they entered the house to execute the warrant. Additionally, because the arresting officer purportedly knew of a particular item in the house — a safe — before executing the warrant, defendant argued that the officers must have entered his home the day before the search warrant was issued, thus compromising the validity of the warrant. The court, however, accepted the arresting officer's testimony that he did not enter and search defendant's home until after he obtained the warrant, and that the house was secured until then. Accordingly, the evidence was admitted.

¶ 4. The jury found defendant guilty of possession of stolen property and possession of marijuana, whereupon the court proceeded to consider the habitual-offender charge. The deputy court manager presented as evidence the docket entries[1] identifying six prior felony convictions: one for possession of marijuana and the other five for buying, receiving, selling, possessing, or concealing stolen property. Defendant objected to one of the docket entries, claiming that it could confuse the jury, but it was admitted over the objection. Prior to the jury instructions, defense counsel emphasized to the jury that the habitual-offender charge must be proven beyond a reasonable doubt.

¶ 5. The court instructed the jury that "the State must have proven beyond a reasonable doubt that [defendant] was convicted

---

[1] We suggest that using the mittimus instead of docket entries would provide more clarity and reduce juror confusion.

of at least three of [the] six felonies" in order to find that defendant was a habitual offender. The court gave no express unanimity instruction on the prior convictions but did instruct the jury to "deliberate [on] the guilt or innocence of the Defendant under the rules I gave to you previously." Those prior instructions included a general unanimity instruction. Defendant made no objection. The jury found defendant guilty on the habitual-offender charge, and neither party requested that the court poll the jury as to the specific prior convictions. Cf. *State v. Setien*, 173 Vt. 576, 580, 795 A.2d 1135, 1140-41 (2002) (mem.) (elaborating a process by which jurors were polled to ensure unanimity for a habitual-offender enhancement). Defendant received an enhanced sentence of two to five years to serve for the possession-of-marijuana conviction and five to ten years to serve for the possession-of-stolen-property conviction. See 13 V.S.A. § 11 ("A person . . . , after having been three times convicted within this state of felonies or attempts to commit felonies, . . . may be sentenced upon conviction of such fourth or subsequent offense to imprisonment up to and including life."). The sentences are concurrent with each other but consecutive to the sentence defendant is serving on other charges.

¶ 6. Following defendant's conviction and subsequent appeal, the court notified the parties that the June 2, 2004 and October 29, 2004 hearings on defendant's suppression motion could not be transcribed. The district court could not locate the compact discs on which the June 2 and the October 29 proceedings were recorded. Responding to the loss of the CDs, this Court remanded the matter for the narrow purpose of reconstructing the record. *State v. Bain*, No. 2006-327, slip op. at 1 (Vt. May 14, 2007) (unreported mem.).

¶ 7. The district court ordered that the record be recreated under Rule 10(c) and (e), and instructed defendant to "prepare a statement of the evidence and proceeding[s] when the transcript is unavailable." Defendant never submitted anything to recreate the record. His counsel did, however, advise the court that defendant was incarcerated in Oklahoma and therefore could not access his extensive notes impounded in Vermont, that his current attorney was not present at the June 2 suppression hearing, and that his prior counsel disclaimed any knowledge of the proceedings in question.

¶ 8. Because defendant did not comply with the court order, the court proposed to use its notes from June 2 and October 29 to

recreate the record. The court proposed a recreated record for the parties and ordered defendant to raise any objections no later than October 12, 2007. Defendant objected to the proposed recreated record, claiming that the record lacked clarity and detail with respect to the scope of the search. He reasserted the argument that he could not comply with Rule 10 or the court order because he had not been provided access to his notes. Further, defendant claimed that his attorney's memory of the October 29 hearing was limited by the lapse of time between proceedings and her role as examiner for much of that day, which prevented her from taking extensive notes. Finding defendant's objections unpersuasive, on October 31, 2007, the district court issued a "settlement and approval of the record pursuant to V.R.A.P. 10(c)." This appeal followed.

## I. The Reconstructed Record

¶ 9. Defendant contends that the reconstructed record was inadequate because it did not contain sufficient details to support defendant's claim that the police had searched his home the day before the warrant issued. He claims that testimonial and nontestimonial information missing from the record would have had an impact on this Court's decision concerning the warrantless search, and that the missing information precludes effective appellate review. We disagree.

¶ 10. Vermont has defined procedures for reconstructing a missing record. See V.R.A.P. 10(c). According to Rule 10(c), "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." V.R.A.P. 10(c). In order to demonstrate that he has been denied a fair appeal, defendant must show prejudice to the outcome of his case due to missing transcripts and " 'must present something more than gross speculation that the transcripts were requisite to a fair appeal.' " *State v. Lemire*, 161 Vt. 624, 625, 640 A.2d 541, 542 (1994) (mem.) (quoting *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)).

¶ 11. Pursuant to our remand order, the trial court ordered defendant "to prepare a statement of the evidence and proceeding[s] when the transcript is unavailable." Defendant did not file

any statement with the court. The court reconstructed the record using its notes and backup logs for the two hearings. Because defendant did not participate in the reconstruction of the record, he has waived his right to claim error based on a deficient record. *Fournier v. Fournier*, 169 Vt. 600, 601-02, 738 A.2d 98, 101 (1999) (mem.). Although the use of "may" in Rule 10(c) appears permissive, "an appellant who fails to seek preparation of a substitute statement of trial proceedings forfeits any claim that he or she has been prejudiced by the absence of a transcript." *Williams v. United States*, 927 A.2d 1064, 1068 (D.C. 2007) (quotation omitted) (interpreting District of Columbia Rule of Appellate Procedure 10).

■ ¶ 12. Defendant asserts that the reconstructed record contains sparse testimony concerning the claimed pre-warrant search and highlights sections of the reconstructed record that the court noted were "unclear." However, he does not describe with any specificity how the missing testimony might alter this Court's decision, and only speculates as to its impact on the outcome of the original hearing. Additionally, the testimony that the court deemed unclear after reconstruction was the testimony given by defendant, which he could have clarified by participating in the reconstruction process. The trial court decided the suppression motion based on the testimony of the arresting officer, and we defer to the trier of fact's decision to credit a particular witness or piece of evidence. *Okemo Mountain Inc. v. Lysobey*, 2005 VT 55, ¶ 12, 178 Vt. 608, 883 A.2d 757 (mem.); see also *Lopez v. State*, 769 P.2d 1276, 1282 n.7 (Nev. 1989) (where the reconstructed portion of the record consisted of modifying evidence, conviction sustained because weighing evidence is the province of the jury). Therefore, any testimony missing from the reconstructed transcript is due to defendant's lack of participation in the reconstruction process, and any additional testimony that defendant claims was omitted would not affect the outcome because we defer to the trial court's assessment of witness credibility. *State v. Dixon*, 2008 VT 112, ¶ 34, 185 Vt. 92, 967 A.2d 1114.

¶ 13. The cases defendant cites to support his claim that the court's approval of the reconstructed record was erroneous are not persuasive. In *State v. DePastino*, the Supreme Court of Connecticut upheld the reconstructed record created by the trial court, finding that the defendant did not "identify a specific claim of error that the appellate court will be unable to review effectively

using the reconstructed record." 638 A.2d 578, 582 (Conn. 1994). The court held that the sufficiency of a reconstructed record is a matter of fact and that the appellate court should uphold the trial court's findings unless they are clearly erroneous. *Id.* As stated above, though defendant claimed the missing transcript precluded effective review of the warrantless search, he did not show how specific missing materials would illuminate this issue, and he did not participate in the reconstruction process. Thus, as in *DePastino*, there is no error.[2]

## II. The Motion to Suppress

¶ 14. Defendant claims that the trial court erred in denying his motion to suppress because its finding that no warrantless search of defendant's home occurred was not supported by the evidence. Again, we disagree.

¶ 15. "Upon appeal of a motion to suppress, this Court applies a deferential standard of review to the trial court's finding of fact. . . . Legal conclusions are reviewed de novo." *State v. Mayo*, 2008 VT 2, ¶ 12, 183 Vt. 113, 945 A.2d 846 (quotation omitted). We will not overturn factual findings unless, "taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them." *Id.* (quotation omitted). As previously noted, "the decision to credit a particular witness or piece of evidence is reserved to the fact-finder, and will not be disturbed without some compelling indication of error." *Okemo Mountain*, 2005 VT 55, ¶ 12; see also *Dixon*, 2008 VT 112, ¶ 34 ("It [is] within the province of the trial court to determine [the weight given to testimony], and we will not reevaluate the conflicting testimony or the credibility of witnesses.").

¶ 16. Here, the district court explicitly addressed defendant's claim that a warrantless search had occurred and found it to be "entirely unsupported by the evidence." Based upon the arresting officer's testimony, the court found that, though the officer went to

---

[2] Defendant also cites *Bellows v. State*, 871 P.2d 340, 343 (Nev. 1994), as general support for his claims, but it is factually inapposite. The *Bellows* court relied entirely on the defendant's escape from custody to deny his motion for a new trial, reasoning that he should not benefit from eluding the law and interfering with the appellate process. *Id.* at 343. Here, defendant's actions did not contribute to the loss of the transcripts, so the decision in *Bellows* is not pertinent to our analysis; the *Bellows* court did not consider the issues before us today.

defendant's home on May 22, no search occurred until after the warrant was issued the following day. During the suppression hearing, the officer was asked three times on direct examination whether he or anyone else had entered defendant's home prior to his receiving the search warrant. Each time he responded in the negative. The defense did not question the arresting officer about a prior warrantless search, but, rather, focused on whether the search the following day exceeded the scope of the warrant. The trial judge weighed all the evidence and found the officer's testimony credible and, therefore, dispositive on the issue. The decision to credit a particular witness is not one we will disturb on appeal, absent a compelling indication of error. *Okemo Mountain*, 2005 VT 55, ¶ 12. There is no indication of error here.

¶ 17. Citing *Mayer v. Mayer*, defendant claims that the court's findings were insufficient because they did not state "the facts essential to the disposition of the case." 144 Vt. 214, 217, 475 A.2d 238, 240 (1984). In *Mayer*, a child-custody case, we held that the trial court's findings were insufficient because they did not explain how the court came to its conclusion. *Id.* Here, the court made its conclusion based on the arresting officer's testimony, stating, "Although [the officer] visited the Bain home on the 22nd and spoke to the Defendant, no search occurred until after [the judge] issued her warrant." This conclusion is supported by the officer's testimony during the suppression hearing, and thus is not clearly erroneous.

## III. The Habitual-Offender Instructions

¶ 18. The final issue is whether defendant, who raised no objection to the jury instructions and who concedes that he has the requisite number of prior convictions, has a constitutional right to a remand for a unanimous jury determination as to which particular convictions are being counted. Because defendant did not object to the jury instructions at trial, we will reverse only if there is plain error.[3] *State v. Brochu*, 2008 VT 21, ¶ 71, 183 Vt. 269, 949 A.2d 1035. "Plain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave

---

[3] Vermont Rule of Criminal Procedure 30 states: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Carpenter*, 170 Vt. 371, 375, 749 A.2d 1137, 1139-40 (2000) (quotation omitted). We review the instructions in their entirety. *State v. Pelican*, 160 Vt. 536, 539, 632 A.2d 24, 26 (1993). The error must be obvious, and must have been prejudicial to the jury's deliberations. *Id.* Needless to say, if an error is harmless, it does not amount to plain error. See, e.g., *United States v. Evans*, 285 F.3d 664, 670-71 (8th Cir. 2002) (holding that error was harmless, not plain, where appellant failed to show that error, if any, prejudiced him).

■ ■ ¶ 19. Any error in this case was harmless. Error is harmless "if we can state a belief that the error was harmless beyond a reasonable doubt." *State v. Provost*, 2005 VT 134, ¶ 18, 179 Vt. 337, 596 A.2d 55. Though defendant objected to one of the docket entries as technically confusing,[4] at no time during trial or on appeal has defendant contended that any of the predicate convictions are invalid or unproven. During oral argument before this Court, defendant's attorney conceded that all six predicate convictions are valid. As the Supreme Court of the United States noted in *Apprendi v. New Jersey*, "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that [the defendant] did not challenge the accuracy of that 'fact' in his case, mitigated the [Constitutional] concerns." 530 U.S. 466, 488 (2000). Different circumstances may require better methods for ensuring unanimity on a habitual-offender enhancement. We do not, however, need to address what those circumstances and methods might be today.

*Affirmed.*

---

[4] As noted previously, some confusion arose over the docket entries reflection of one of defendant's prior convictions. Defendant expressed concern that the jury would be confused as to the disposition of that matter on appeal in this Court, but never questioned the substantive validity of the conviction or whether it was a felony. Indeed, after the jury retired to consider the habitual-offender charge, the jury asked for clarification about the same set of docket entries. At that time, however, defendant requested that the court simply tell the jury that "the evidence is what the evidence is."